## Case No. 6,762.

HOWARD et al. v. PRINCE et al.

[1 Hughes, 239;[1] 11 N. B. R. 322.]

District Court, E. D. Virginia. 1874.

FRAUDULENT CONVEYANCES—VENDOR REMAINING IN POSSESSION AFTER A BILL OF SALE — FOLLOWING STATE LAW.

1. The possession by vendor, after bill of sale, of the fixtures used in the manufacture of tobacco, is not per se fraudulent, under the rule in Twyne's Case and under the 1st section of chapter 114, of the Virginia Code.

2. In such a case, the principle, caveat creditor, is to be applied.

3. In such a case, the federal court follows the state law and the precedents of the state courts.

[This was a suit brought by Howard and Wendlinger, assignees, against George S. and John D. Prince.]

In the beginning of February, 1873, George S. Prince, a manufacturer of tobacco in Richmond, Virginia, applied to his father, John D. Prince, of Brooklyn, New York, for $2,000, offering to mortgage the fixtures in his factory to secure the amount, or to make an absolute bill of sale of the fixtures. John D. Prince replied, that he could not then say whether he could spare the money, that his son might, however, draw for $500, and that if he should find he could let George have the rest of the sum, he would insist upon an absolute sale to him of the fixtures. A draft for $500 was drawn by George Prince, on the 1st of March, and paid by John D. Prince. Original letters relating to the transaction, reaching to July 19th, 1873, are filed in the cause. In June afterwards, upon renewed solicitations by George, the father finally consented to spare the remaining $1,500, and required a bill of sale of the fixtures to be sent him. Accordingly, on the 14th of June, 1873, George S. Prince drew for $500 as part of the $1,500 remaining due, which draft was paid by John D. Prince. But on the 19th of July following, on George's telegraphing that he had drawn a third draft for $500, John D. Prince wrote, complaining that George had neglected to send him the promised bill of sale with inventory of fixtures, saying that he would accept and pay this draft, but declaring that George need not draw again without performing his promise, for he should certainly allow the draft to be protested. George Prince thereupon forwarded a bill of sale of the fixtures, the original of which is attached to the depositions in the case, taken by Commissioner Winslow, of New York. The bill of sale is dated Richmond, June 14th, 1873. This instrument was copied at the time it was written into the letter-book kept by George Prince in his factory, by M. M. Burton, his manager, was known and talked of in the factory, and no concealment of it attempted. It does not appear to have been recorded in the office of the

chancery court of the city of Richmond, where registered instruments are by law recorded. There is no actual fraud proved in the transaction—none attempted to be proved as against John D. Prince, of Brooklyn, who would seem to be a man of wealth and high character, and a liberal and kind father. Probably the bill of sale was not actually made until about the 19th of July, the date of the third draft, and of Mr. John D. Prince's letter of complaint; probably it was then made out and antedated as of the 14th of June, in order to conform to the date of the second draft, that being the date when George Prince seemed to consider that the contract between himself and father had been concluded. It is contended that if this bill of sale was good at all, the fact that it was dated on the 14th of June, but delivered on the 19th of July, invalidates it without proof that a fraudulent purpose was subserved by such antedating. It is proved by the defence (and is not denied by the complainants) that the whole $2000 obtained from John D. Prince, was used by George in payment of dues to creditors in the line of his business. It is not charged or proved that George Prince was insolvent on the 19th of July, 1873, or that the bill of sale was made in contemplation of insolvency or bankruptcy, or that John D. Prince knew, or had reasonable cause to believe at the time, that his son was insolvent or contemplated bankruptcy. Therefore, this bill of sale does not fall within the second clause of the 35th section of the general bankrupt act [of 1867 (14 Stat. 534)], and was just as valid if made on the 19th of July, 1873, as if made on the 14th of June before. If made in good faith, the 11th section of the amendatory act of congress of 22d of June, 1874 [18 Stat. 180], would take the transaction from the operation of that clause. The panic of 1873 came on in September following the transaction which has been described. George Prince became a victim of it on the 17th of December in that year, when he filed his petition in bankruptcy. His assignees in bankruptcy now file their bill on the chancery side of this court against George S. Prince and John D. Prince, and pray that the bill of sale of the 14th of June, 1873, may be set aside as fraudulent, and that the tobacco fixtures conveyed by it may be sold as part of the assets in bankruptcy, in the case of George S. Prince, bankrupt, pending on the bankruptcy side of this court.

Submitted on written argument and the evidence.

Ould & Carrington and Keen & Davis, for complainants.

Jno. A. Lynham, for defendants.

HUGHES, District Judge. The case presents itself as one of a sale of personalty, where the vendor remains in possession of the goods sold. The old common law rule

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

was, that in such a case the continued possession of the goods by the vendor was, per se, fraudulent, and rendered the sale void. It was decided in Twyne's Case, which was rendered upon the statute of 13 Eliz. c. 5, declaratory of the common law, that though the sale in that case were upon valid consideration, yet the continued possession of the vendor invalidated the sale; the secrecy and non-delivery which was proved raising a presumption that the whole transaction was collusive, creating a trust for the benefit of the vendor. In Edwards v. Harben, 2 Term R. 587, it was held that such possession was not merely evidence of fraud, but was itself, in point of law, fraudulent. These cases controlled the decisions of the English courts for a long period of time, and produced for many years, like decisions by the courts of many of the states in this country, Virginia included, and by the courts of the United States. But in England, the doctrine of fraud, per se, has been discarded, and the milder rule has for some time obtained, that continued possession after sale of personalty by the vendor creates only a presumption of fraud, and that the fact of fraud is not, in suits at law, to be determined by the court, but must be left to the jury; and it is further held in England, that if the personal chattels savor of the realty, as, for instance, engines, utensils, and machinery belonging to a manufacturing establishment, no presumption of fraud will arise from the want of delivery. 2 Kent, Comm. 516, and cases there cited. If the transaction under consideration between George S. Prince and John D. Prince is fraudulent, it is so under the law of Virginia, as construed by the courts of Virginia; that law being now section first of chapter 114 of the Code of 1873.

Counsel for complainants contend that this court must decide this case by the precedents which they cite from the supreme court, and other courts of the United States. In one sense, that should and must be done. But in no case in which a court of the United States has had to pass upon the doctrine to which I have alluded (other than cases in which the personalty concerned was a ship at sea, or other thing exclusively within the admiralty jurisdiction), has it decided against the law and ruling of the courts of the state in which the property was assigned. The leading federal decisions (especially the noted case of Hamilton v. Russell, 1 Cranch [5 U. S.] 309) were rendered upon cases arising in the district court of Columbia, where the federal courts were at liberty to lay down the law irrespective of the laws of the states. In the case now before me, I should go counter to the uniform practice of the courts of the United States if I should be governed by any other law in my decision than the statute of Virginia, just referred to, and should construe it by any other precedents than those of our own court of appeals. I have said that the rule of Edwards v. Harben, 2

Term R. 587, did substantially obtain for a long time in Virginia. See 2 Hen. & M. 289, 302; 2 Munf. 341; 3 Munf. 1, 7; 5 Munf. 28; Gilmer, 15; 5 Rand. [Va.] 211, 599; and 2 Rob. [Va.] 280. But at last our court of appeals found it necessary to recede from a rule which common experience had taught to be unjust and untenable. The cases of honest assignments where the vendor retained possession, were too numerous and too frequent to allow of a further adherence to the old arbitrary rule of fraud per se. Accordingly in the case of Davis v. Turner, 4 Grat. 423, cited with distinguished consideration throughout the United States and in England, most of the judges who had held to the rule, themselves receded from it, and the court adopted the conclusion, expressed as follows by President Cabell: "It seems now conceded on all hands that the continued possession of the vendor, after an absolute sale, is open to explanation in some form or shape, and we are not so restrained from authority as to prevent our allowing an explanation that shows such possession and the whole transaction to have been fair and honest, and especially where such possession has been held under a bailment for a valuable consideration, in good faith made from the vendee to the vendor. . . . It would be carrying a distrust of juries too far to suppose them incapable, with the aid of a wholesome prima facie presumption, to administer justice on this subject, in the true spirit of the statute, and it is better to confine the interposition of the court to guiding, instead of driving, them by instructions, and to the power of granting new trials in case of plain deviation." I need not repeat that this case of Davis v. Turner has become a leading case on the subject on this continent. As declaring the law of Virginia, it is binding upon this court.

The question before us now, is whether the transaction that has been described, which took place between George and John D. Prince, in June and July, 1873, was fraudulent under section first, chapter 114, relating to fraudulent acts, of the Code of Virginia. A full and free power to dispose of chattels is an essential and inherent incident of ownership; and the vendee has the same right to leave them in the possession of the vendor that he would have to take them into his own custody, or place them in the possession of a third person; unless such act necessarily and inevitably tends to deceive and defraud creditors. 4 Hill, 271. The frequent necessity of intrusting personal estate to others than the actual owner, forbids an arbitrary enforcement of the rule that possession shall always be deemed conclusive evidence of title. 2 N. H. 13. It being a case in chancery, I am to exercise the functions of a jury; and in doing so, I am required to presume that the transaction was fraudulent, because of the fact that George S. Prince retained possession of the fixtures assigned

by the bill of sale; but I am also allowed to take the other facts presented in the evidence into consideration, as explaining away or not, this legal presumption. If the bill of sale under consideration had been made for the purpose of securing to John D. Prince the payment of a debt which George S. Prince owed him before the time of the assignment, the case would have been the invidious one of preferring one creditor over others; and the presumption arising from continued possession would have been exceedingly strong, if not insurmountable; for it would have been a case of preference and partiality. But the fact here was, that the father advanced money to the son for the purpose of being used, and which was used, for the benefit of other creditors. The money paid by the father was faithfully appropriated to the claims of other creditors; and the assignment was made, not to the prejudice of other creditors, but to their advantage. This is a circumstance in the case which I find myself unable to consent to disregard. Again, if the property assigned had been public or corporate bonds, or bills payable, or tobacco, or any movable thing which could have been physically delivered with convenience, then if it had not been delivered, but the use and possession of it retained by George S. Prince, the presumption of fraud would have been very strong. But the property assigned was not of this movable and transferable sort. It was fixtures, a personalty which savored of realty; a sort of property which John D. Prince would have had no use for in Brooklyn, N. Y.; a sort of property which as often as not in Richmond, does not belong to the manufacturer of tobacco, but belongs to his landlord or other owners; a sort of property the mere possession and use of which in the business of tobacco manufacturing, are not in fact presumptive of the manufacturer's ownership. It is a sort of property the real ownership of which is not, in fact, and as of course, presumed from the mere use of it by the manufacturer, nor made the basis of credit, any more than is the ownership of the building. It is a sort of property the ownership of which would be especially inquired of by a prudent creditor before giving credit. The Virginia court of appeals having adopted the present English rule on the legal question under discussion, I will presume that it has adopted also the English precedents. See Ryan & M. 312; 8 Taunt. 838; 5 Esp. 22; 3 Barn. & C. 368; and 3 Barn. & Adol. 498.

The case under consideration is emphatically one in which the rule caveat creditor applies. The creditor of a tobacco manufacturer in Richmond does not in fact presume that either a factory building or the fixtures in it is the property of the manufacturer. He does look and he should look to the ownership of each before giving credit upon either.

In the case of fixtures, if there is no actual fraud by misrepresentation and false pretence, fraud ought not even to be presumed from the mere fact that a vendor has use and possession of such ponderous personalty as tobacco fixtures, which he has sold. The evidence of Mr. Burton in this case is, that in nine-tenths of the tobacco factories of Richmond, the fixtures are in other ownership than that of the manufacturers, or are under mortgage. The presumption of fraud created by law in this case, is therefore, I conceive, negatived by the nature of this property as well as by the proved facts of the transaction. The fixtures were bought by contract; they were paid for in money; the purchase-money was used bona fide by the vendor in payment of his creditors; the continued possession was of property that would have been useless if removed merely to effect a change of possession; it was used after the sale, for the benefit of the business and of the creditors; and the property was of such a character as not by the custom of Richmond to create the impression of ownership in the person using it, or to give a credit to that person. I am, therefore, of the opinion that the bill of sale in this case ought not to be set aside; and that the bill of the complainants ought to be dismissed. I will make an order to that effect, and give leave to the complainants within ten days of its date to appeal from the order upon filing a bond for costs, and a copy of this record and this decision with the clerk of the circuit court.

There was no appeal.